IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § § § | Chapter 11 |
| | § § | Case No. 19-33395 (MI) |
| LEGACY RESERVES INC., *et al.*,[1] | § § | (Jointly Administered) |
| Debtors. | § § § § | **(Emergency Hearing Requested)** |

# EMERGENCY MOTION OF THE OFFICIAL
# COMMITTEE OF UNSECURED CREDITORS TO
# CONTINUE DEBTORS' DISCLOSURE STATEMENT HEARING

> THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU. IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY. YOU MUST FILE AND SERVE YOUR RESPONSE WITHIN **21 DAYS**\** OF THE DATE THIS WAS SERVED ON YOU. YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED. IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING. UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING.
>
> \*\***EMERGENCY RELIEF HAS BEEN REQUESTED**. A TELEPHONIC HEARING[2] WILL BE CONDUCTED ON **AUGUST 21, 2019** AT **2:00** PM CENTRAL TIME TO SET THIS MOTION FOR HEARING. IF YOU OBJECT TO THE RELIEF REQUESTED OR YOU BELIEVE THAT EMERGENCY CONSIDERATION IS NOT WARRANTED, YOU MUST EITHER APPEAR AT THE HEARING OR FILE A WRITTEN RESPONSE PRIOR TO THE HEARING. OTHERWISE, THE COURT MAY TREAT THE PLEADING AS UNOPPOSED AND GRANT THE RELIEF REQUESTED. REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Legacy Reserves Inc. (9553); Legacy Reserves GP, LLC (1065); Legacy Reserves LP (1069); Legacy Reserves Finance Corporation (1181); Legacy Reserves Services LLC (2710); Legacy Reserves Operating LP (7259); Legacy Reserves Energy Services LLC (1233); Legacy Reserves Operating GP LLC (7209); Dew Gathering LLC (4482); Pinnacle Gas Treating LLC (3711); Legacy Reserves Marketing LLC (7593). The location of the Debtors' service address is: 303 W. Wall St., Suite 1800, Midland, TX 79701.

[2] Instructions to access the hearing telephonically can be found on the Court's website at: https://www.txs.uscourts.gov/content/united-states-bankruptcy-judge-marvin-isgur

The Official Committee of Unsecured Creditors (the "**Committee**"), duly appointed in the Chapter 11 cases of Legacy Reserves Inc. and its affiliated debtors and debtors-in-possession (collectively, the "**Debtors**"), by and through its undersigned counsel, submit this motion (the "**Motion**") pursuant to 11 U.S.C. § 105(a) and Federal Rule of Bankruptcy Procedure 9006(b), to continue the hearing on the *Disclosure Statement for the Joint Chapter 11 Plan of Reorganization for Legacy Reserves Inc. and Its Debtor Affiliates* [Docket No. 373] (the "**Disclosure Statement**") and (ii) the *Debtors' Motion for Entry of an Order (I) Approving the Adequacy of the Disclosure Statement, (II) Approving the Solicitation and Voting Procedures With Respect to Confirmation of the Proposed Joint Chapter 11 Plan of Reorganization For Legacy Reserves Inc. and its Debtor Affiliates, (III) Approving the Forms of Ballots and Notices in Connection Therewith, (IV) Approving the Rights Offering Materials, (V) Scheduling Certain Dates with Respect Thereto, and (VI) Granting Related Relief* [Docket No. 344] (the "**Disclosure Statement Motion**") and continuing the hearing at which the Court will consider approval of the Disclosure Statement and the other relief requested in the Disclosure Statement Motion which is currently noticed for September 10, 2019 at 10:00 a.m. prevailing Central Time (the "**Disclosure Statement Hearing**").[3] In further support of this Motion, the Committee respectfully states as follows:

**PRELIMINARY STATEMENT**

1.  A genuine emergency exists because the Debtors, GSO, the Ad Hoc Group of Senior Noteholders and their respective financial advisors are not providing prompt discovery responses and have sought to limit the timing of discovery in a manner that prevents the

---

[3] Capitalized terms used in this Objection but not otherwise defined shall have the meaning ascribed to them in the *Joint Chapter 11 Plan Of Reorganization For Legacy Reserves Inc. And Its Debtor Affiliates* [Docket No. 372] (the "Plan") and the Disclosure Statement.

2

Committee from providing a fulsome response to the Disclosure Statement. The Committee's objection is due September 3. Accordingly, a genuine emergency justifies consideration of this Motion to avoid substantial prejudice to the Committee and its constituency.

2.  The Committee seeks a continuance of the September 10 Disclosure Statement Hearing because of the Debtors', GSO, the Ad Hoc Group of Noteholders and their respective financial advisors' attempts to undermine the Committee's reasonable request and Congressionally mandated duty to conduct discovery in advance of the Disclosure Statement Hearing. In short, the parties to the Global RSA have scheduled the Disclosure Statement Hearing on the shortest permitted notice and then refused to produce documents and witnesses in response to the Committee's request in advance of that hearing. Indeed, in an effort to foreclose any discovery before the Disclosure Statement Hearing, the RSA Parties have threatened to withhold from future depositions any witnesses deposed prior to the Disclosure Statement Hearing.

3.  The Bankruptcy Code specifically delineates the Committee's rights to "investigate the acts, conduct, assets, liabilities, and financial condition of the debtor, the operation of the debtor's business and the desirability of the continuance of such business, and any other matter relevant to the case or to the formulation of a plan[.]" 11 U.S.C. § 1103(c)(2). In furtherance of its duties, the Committee needs sufficient time to receive, review, and digest information relevant to the adequacy of the Disclosure Statement and the confirmability of the Plan. However, the Debtors, GSO, the Ad Hoc Group of Noteholders and their respective financial advisors for these parties have refused to comply with the Committee's reasonable request to provide documents and make witnesses available for depositions on a schedule

allowing sufficient time for the Committee to formulate an opinion on the Disclosure Statement in advance of the Disclosure Statement Hearing.

4. Moreover, the Debtors' financial advisor, Perella Weinberg Partners ("**PWP**"), who prepared the Valuation Analysis attached to the Disclosure Statement in support of the Plan, and who will likely attempt to submit expert testimony in support of the Valuation Analysis, has yet to be retained and may in fact be impermissibly conflicted. At the July 31 - August 1, 2019 hearing on PWP's retention application, the Court instructed PWP to confer with the Committee on resolution of the issues regarding PWP's lack of disclosure after adjourning the hearing. Despite the Court's clear instruction, PWP has not reached out to the Committee to resolve this key issue. As the Court stated, and the Committee is well aware, "if it turns out that [PWP is] not disinterested, then it's a big problem[.]"

5. The information sought by the Committee is not trivial—it goes to the heart of the Plan and the events that led to the construction of the Initial RSA and Global RSA. Further, the Committee is being asked to formulate its position on the Disclosure Statement without having a meaningful chance to investigate issues that may have a material impact on both the adequacy of the Disclosure Statement and the confirmability of the Plan. These include, amongst other issues (i) the formulation of the Initial RSA, Global RSA and the Plan; (ii) the Valuation Analysis prepared by PWP, who has not been retained and may be conflicted; (iii) the broad releases contemplated under the Plan; and (iv) the Rights Offering made available to GSO and the Ad Hoc Group of Noteholders.

6. By not allowing for reasonable discovery or depositions before the Disclosure Statement Hearing the Debtors seek to avail themselves of the benefits of the Bankruptcy Code but without the Committee's statutorily mandated oversight. The Court should not allow such

behavior. The Committee must be permitted to collect and analyze all of the pertinent facts, discuss relevant issues, and formulate its positions, all to advise the Court of the Committee's concerns, objections, or support of the Disclosure Statement and Plan. As this Court noted at the hearing on August 1, 2019, "[t]he system is working the way it's supposed to work" when the Committee raises difficult questions and prosecutes them in a professional manner.

7.     The Committee remains hopeful that it will be able to reach a consensual solution that maximizes value for all stakeholders and avoids unnecessary and costly litigation. Thus, the Committee commits to work as promptly as possible to move these cases forward once it has all of the information necessary for it to comply with its statutory duties. However, the timing is largely within the control of the Debtors, GSO, the Ad Hoc Group of Noteholders and the respective financial advisors of these parties who, to date, have failed to supply the necessary information to the Committee on a customary schedule.

8.     Accordingly, the Committee requests that the Court continue the Disclosure Statement Hearing to a date that is at least twenty-one (21) days after the Debtors, GSO, the Ad Hoc Group of Noteholders and their respective financial advisors have complied with the Committee's discovery request and produced the required witnesses for depositions.

**JURISDICTION, VENUE AND STATUTORY BASIS FOR RELIEF**

9.     The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and the *Order of Reference to Bankruptcy Judge from the United States District Court for the Southern District Texas*, dated May 24, 2012. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

10.    The statutory bases for the relief requested in this Motion are section 105(a) and of title 11 of the United States Bankruptcy Code (the "**Bankruptcy Code**") and Rule 9006 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**").

# BACKGROUND

### I. General Case Background.

11. On June 18, 2019 (the "**Petition Date**"), each of the Debtors filed voluntary petitions under Chapter 11 of the Bankruptcy Code. Since the Petition Date, the Debtors have continued to operate and manage their businesses as debtors-in-possession pursuant to Bankruptcy Code Sections 1107(a) and 1108.

12. On July 3, 2019, the Office of the United States Trustee appointed the Committee. *See Notice of Appointment of Committee of Unsecured Creditors* [Docket No. 179]. The Committee's membership presently consists of: (i) Wilmington Trust, National Association, in its capacity as indenture trustee for the Senior Notes; (ii) Dalton Investments, LLC; (iii) John M. Dinkel; and (iv) Nicholas Mumford.

### II. The Plan and Disclosure Statement.

13. On August 2, 2019, the Debtors filed their *Joint Chapter 11 Plan Of Reorganization For Legacy Reserves Inc. And Its Debtor Affiliates* [Docket No. 342] and the *Disclosure Statement for the Joint Chapter 11 Plan of Reorganization for Legacy Reserves Inc. and Its Debtor Affiliates* [Docket No. 343].

14. On August 18, 2019, the Debtors filed the revised Plan and Disclosure Statement to include for the first time, and amongst other things, the Valuation Analysis prepared by Perella Weinberg Partners LP ("**PWP**") and its affiliate Tudor Pickering Holt & Co. ("**TPH**"), Liquidation Analysis and Financial Projections.

### III. PWP Retention Application.

15. On July 2, 2019, the Debtors filed the application to retain PWP as the Debtors' financial advisor [Docket No. 174] (the "**PWP Retention Application**"). The Committee

objected to the PWP Retention Application [Docket No. 288] due to, *inter alia*, PWP's failure to comply with the Bankruptcy Rules requiring a disclosure of connections with certain case parties, including GSO, the Plan Sponsor. In an attempt to address the Committee's concerns, PWP provided further disclosure in the amended and restated declaration of Kevin M. Cofksy [Docket No. 293]. On July 31 and August 1, 2019, the Court held a hearing on the PWP Retention Application and thereafter continued the hearing without date (the "**PWP Retention Hearing**").

16.     At the PWP Retention Hearing, and in light of the concerns raised by the Committee, the Court recommended that the parties re-notice the PWP Retention Hearing on an expedited basis and suggested that PWP's counsel "confer [with] the Committee" on an appropriate protocol to address the Bankruptcy Rule disclosure issues. *See Transcript regarding Hearing Held August 1, 2019* (excerpt attached at **Exhibit A** hereto), at 63:20-21. Despite the Court's suggestion, PWP's counsel has not contacted Committee counsel to resolve the significant disclosure issues.

**IV.     The Committee's Discovery Request.**

17.     On July 15, 2019, the Committee served the Debtors and PWP with its first set of requests for production of documents. On July 26, 2019, the Committee served the Debtors with its second set of requests for production of documents. On August 8, 2019, and in connection with the Disclosure Statement Hearing, the Committee served requests for production of documents on the Debtors, PWP, GSO Capital Partners and certain affiliates ("**GSO**"), PJT Partners ("**PJT**"), the Ad Hoc Group of Holders Of Legacy Reserves LP's 8% Senior Notes Due 2020, Legacy Reserves LP's 6.625% Senior Notes Due 2021, and/or Legacy Reserves LP's 8% Convertible Senior Notes Due 2023 (the "**Ad Hoc Group of Noteholders**"), and Houlihan

Lokey Capital, Inc. ("**Houlihan**" and together with the Debtors, PWP, GSO PJT, the Ad Hoc Group of Noteholders, the "**Parties**") (the "**Disclosure Statement Document Requests**").

18. On August 8, 2019, and in connection with the Disclosure Statement Hearing, the Committee noticed Rule 30(b)(6) of the Federal Rule of Civil Procedure depositions of the Debtors, PWP, GSO, PJT, the Ad Hoc Group of Noteholders and Houlihan. On even date, the Committee also noticed depositions of Kevin M. Cofsky of PWP and the Debtors' Chief Executive Officer, James Daniel Westcott (the "**Noticed Disclosure Statement Depositions**").

19. Pursuant to the Disclosure Statement Document Requests and the Noticed Disclosure Statement Depositions, the Committee proposed the following schedule, in advance of the objection deadline of September 3, 2019 and the Disclosure Statement Hearing on September 10, 2019 (the "**Committee's Discovery Schedule**").

| Date | Event |
| --- | --- |
| August 21, 2019 | Parties shall complete production of document requests in response to the Committee's Documents Requests |
| August 27, 2019 at 9:00 am ET | Deposition of Debtor by Rule 30(b)(6) representative |
| August 27, 2019 at 1:00 pm ET | Deposition of PWP by Rule 30(b)(6) representative |
| August 28, 2019 at 9:00 am ET | Deposition of GSO by Rule 30(b)(6) representative |
| August 28, 2019 at 1:00 pm ET | Deposition of PJT by Rule 30(b)(6) representative |
| August 29, 2019 at 9:00 am ET | Deposition of the Ad Hoc Group of Senior Noteholders by Rule 30(b)(6) representative |
| August 29, 2019 at 1:00 pm ET | Deposition of Houlihan by Rule 30(b)(6) representative |
| August 30, 2019 at 9:00 am ET | Deposition of James Daniel Westcott |
| August 30, 2019 at 1:00 pm ET | Deposition of Kevin M. Cofsky |

20. On August 12, 2019, and in response to the Committee's Disclosure Statement Document Requests and the Noticed Disclosure Statement Depositions, the Debtors circulated a proposed plan confirmation discovery schedule order for the Disclosure Statement Hearing and

Plan Confirmation (the "**Proposed Scheduling Order**"). The Debtors proposed the following plan confirmation schedule (the "**Confirmation Schedule**").

| Date | Event |
| --- | --- |
| September 3, 2019 | Parties shall serve any document requests in connection with Plan Confirmation (the "**Confirmation Document Requests**") |
| September 10, 2019 | Parties shall substantially complete production of document requests in response to Confirmation Documents Requests |
| September 26, 2019 | Cutoff for fact discovery, including the completion of any fact depositions. |
| October 2, 2019 | Parties shall serve any initial expert reports |
| October 9, 2019 | Parties shall serve any rebuttal expert reports |
| October 14, 2019 | Parties shall complete any expert depositions |
| October 21, 2019 | Parties shall exchange final witness and exhibit list |

**V.    The Meet and Confer.**

21.    On August 19, 2019, the Committee, the Debtors, GSO, and PWP met and conferred regarding the Committee's Discovery Schedule and Confirmation Schedule. At the meet and confer, counsel to the Debtors, GSO and PWP (the "**Participating Parties**") stated they would not complete the production of documents in advance of the Noticed Disclosure Statement Depositions and the production would only begin on or after the Committee's August 21, 2019 deadline for the completion of document production.

22.    The Participating Parties did not commit to providing witnesses for the Noticed Disclosure Statement Depositions and did not provide alternative dates when witnesses may be available for deposition. The Participating Parties also stated that if witnesses were provided for the Noticed Disclosure Statement Depositions, they would not be provided again in advance of Plan Confirmation.

23.    To date, the Debtors have produced approximately 54 documents responsive to the Disclosure Statement Document Requests. The last production of documents from the

9

Debtors responsive to the Disclosure Statement Document Requests was produced approximately two (2) weeks ago on August 8, 2019. PWP, GSO, PJT, the Ad Hoc Group of Noteholders and Houlihan have not produced any documents responsive to the Disclosure Statement Document Requests.

## VI. Delayed Discovery Necessitates The Continuance.

24. The critical information which the Committee has not received from the Parties is identified in the chart below.

| Request No. | General Topic | Committee's Comment |
|---|---|---|
| 1. | Documents and communications relating to the formulation of the Plan, including negotiations with Supporting Creditors. | The Debtors have produced marketing process materials, presentation materials, and board minutes but have not substantially complied with the Committee's request. |
| 2. | Documents and communications relating to the Global RSA and the Initial RSA, including the Rights Offering, Backstop Commitments, Incremental Equity Investment, Exit Facility, the New Exit Note, draft versions of the Global RSA and the Initial RSA, term sheets, board presentations and any communications regarding the Global RSA and the Initial RSA. | The Parties have not substantially complied with the Committee's request. |
| 3. | Documents and communications relating to the Debtors' solvency. | The Parties have not substantially complied with the Committee's request. |
| 4. | Documents and communications relating to the Valuation Analysis. | The Parties have not substantially complied with the Committee's request. |
| 5. | Documents and communications relating to the Liquidation Analysis. | The Parties have not substantially complied with the Committee's request. |
| 6. | Documents and communications relating to the Debtors' pre-petition efforts to restructure their debt, including the marketing process ran by the Debtors' financial advisors. | The Parties have not substantially complied with the Committee's request. |
| 7. | Documents and communications relating to any valuation analysis conducted by the Debtors. | The Parties have not substantially complied with the Committee's request. |

| Request No. | General Topic | Committee's Comment |
|---|---|---|
| 8. | Documents and communications relating to the price of oil, natural gas, and other hydrocarbons. | The Parties have not substantially complied with the Committee's request. |
| 9. | Documents and communications relating to actual or projected financial performance. | The Parties have not substantially complied with the Committee's request. |
| 10. | Documents and communications relating to contemplated sales, dispositions and financings of the Debtors' assets. | The Parties have not substantially complied with the Committee's request. |
| 11. | Documents and communications relating to the recovery of the Debtors' creditors. | The Parties have not substantially complied with the Committee's request. |
| 12. | Documents and communications relating to the Releases. | The Parties have not substantially complied with the Committee's request. |
| 13. | Documents and communications relating to the impact of the Plan on any unsecured creditor of the Debtor. | The Parties have not substantially complied with the Committee's request. |
| 14. | Documents and communications relating to PWP connections to any case party. | PWP has not substantially complied with the Committee's request. |

**ARGUMENT**

25. Bankruptcy Code Section 105(a) grants broad authority and discretion for this Court to take such actions and implement such procedures as are necessary to enforce the provisions of the Bankruptcy Code. Furthermore, Bankruptcy Rule 9006(b) gives this Court broad discretion to enlarge for "cause" the time period in which actions may be taken under the Bankruptcy Code, the Bankruptcy Rules and Orders of this Court.

26. As contemplated by the Bankruptcy Code, official committees are intended to play a central role in business reorganizations. *See Matter of Advisory Comm. of Major Funding Corp.,* 109 F.3d 219, 224 (5th Cir. 1997) ("Creditor Committees have the responsibility to protect the interest of the creditors; in essence, the function of a creditors' committee is to act as a watchdog on behalf of the larger body of creditors which it represents."); *Philip v. L.F.*

*Rothschild Holdings (In re L.F. Rothschild Holdings),* 163 B.R. 45, 49 (S.D.N.Y. 1994) (quoting *In re Penn-Dixie Indus., Inc.,* 9 B.R. 941, 944 (S.D.N.Y. 1981) ("The Bankruptcy Code contemplates a significant and central role for committees in the scheme of a business reorganization."). Section 1103 of the Bankruptcy Code expressly authorizes an official committee to "investigate the acts, conduct, assets, liabilities, and financial condition of the debtor, the operation of the debtor's business . . . and any other matter relevant to the case or to the formulation of a plan." 11 U.S.C. § 1103(c)(2). As such, the Committee is "expressly authorized by statute to investigate the assets and liabilities of the debtor, and is empowered to perform such other services as are in the interests of unsecured creditors generally." *In re Dewey & Leboeuf LLP,* No. 12-12321 MG, 2012 WL 5985445, at *3 (Bankr. S.D.N.Y. Nov. 29, 2012).

27. Specifically, official committees are meant to be indispensable participants in the formulation of a reorganization plan as they speak for groups of creditors with shared interests. *See* H.R. Rep. No. 95-595, at 235 (1977), reprinted in 1978 U.S.C.C.A.N. 5963, 6194. The investigative powers afforded to official committees under Bankruptcy Code Section 1103(c)(2) are central to their ability to fulfill their statutory duties by making an informed decision about the feasibility of a plan and whether it is in the best interests of the particular committee's constituency. *See* Collier on Bankruptcy, § 1103.5[1](5)(d) (16th ed.) ("A committee's role in the plan process is probably its most important in any case. The legislative history to section 1103 makes it clear that Congress envisioned that an official committee is intended to be the party that negotiates a chapter 11 plan on behalf of its constituency").

28. Together with the right and duty of an official committee to participate in the formulation of a plan goes its right and duty to make sure that a disclosure statement contains adequate information with respect to the matters of interest to the committee's constituency. *See,*

*e.g., In re A.C. Williams Co.*, 25 B.R. 173, 177 (Bankr. N.D. Ohio 1982) (stating that "it was the intent of Congress that a creditors' committee be active. The creditors' committee has the duty to consult with the debtor/debtor-in-possession regarding the disclosure statement").

29. Despite clear Congressional intent of the Committee to carry out its oversight duties regarding the adequacy of a disclosure statement in the formulation of a plan, the Confirmation Schedule attempts to shackle the Committee's opportunity to perform its statutory duties to the Debtors' unsecured creditors. The Committee is being told to formulate its position on the Disclosure Statement without having a meaningful chance to investigate issues that may have a material impact on both the adequacy of the Disclosure Statement and the confirmability of the Plan.

30. As discussed herein, there are numerous issues that need to be thoroughly investigated by the Committee before it can formulate an informed position with respect to the Debtors' request for approval of the Disclosure Statement. These include, amongst other issues (i) the formulation of the Initial RSA, Global RSA and the Plan; (ii) the Valuation Analysis prepared by PWP, who has not been retained and may be conflicted; (iii) the broad releases contemplated under the Plan; and (iv) the Rights Offering made available to GSO and the Ad Hoc Group of Noteholders.

31. The Debtors have crafted a Confirmation Schedule designed to override the Committee's functions and prevent the Committee from conducting necessary and reasonable discovery before the Disclosure Statement Hearing. However, the Committee must be permitted to perform its Congressionally mandated obligations. Further, given the Committee's outstanding discovery requests from the Parties, the unwillingness of the Debtors to provide a consensual

extension reflects their apparent lack of appreciation of the all-important role the Committee should play in these cases generally and in the plan process in particular.

32. Moving forward with the Disclosure Statement Hearing in the current case posture will result in an unnecessary waste of estate resources. The Committee's request for a continuance under these circumstances is unremarkable and will enable the Committee to conduct the requisite investigation of the negotiations surrounding the Global RSA, the Initial RSA, the Debtors' assets, liabilities, and conduct. Only following this investigation can the Committee exercise its statutory right to formulate its position on the Disclosure Statement and either support the Plan or seek another path for the Debtors reorganization.

*[Remainder of Page Intentionally Blank]*

## CONCLUSION

**WHEREFORE**, for the foregoing reasons, the Committee respectfully requests that the Court continue the Disclosure Statement Hearing with the proposed order attached and grant such other relief as this Court deems just and proper.

Dated: August 20, 2019
       Houston, Texas

Respectfully submitted,
By: */s/ Hugh M. Ray, III*

**PILLSBURY WINTHROP SHAW PITTMAN LLP**
Hugh M. Ray, III (State Bar No. 24004246)
Two Houston Center
909 Fannin, Suite 2000
Houston, TX 77010-1028
Telephone: (713) 276-7600
Email: hugh.ray@pillsburylaw.com

- and -

**BROWN RUDNICK LLP**
Robert J. Stark (admitted *pro hac vice*)
Bennett S. Silverberg (admitted *pro hac vice*)
Andrew M. Carty (admitted *pro hac vice*)
Uchechi Egeonuigwe (admitted *pro hac vice*)
Seven Times Square
New York, NY 10036
Telephone: 212-209-4800
Email:  rstark@brownrudnick.com
bsilverberg@brownrudnick.com
acarty@brownrudnick.com
uegeonuigwe@brownrudnick.com

-and -

Jeffrey L. Jonas (admitted *pro hac vice*)
James Stoll (*pro hac vice* pending)
One Financial Center
Boston, MA 02111
Telephone: 617-856-8200
Email:  jjonas@brownrudnick.com
Email:  jstoll@brownrudnick.com

*Counsel for the Official Committee of Unsecured Creditors*

4813-4357-2642.v2

## CERTIFICATE OF SERVICE

I hereby certify that, on August 20, 2019, a true and correct copy of the foregoing was served via email through the Bankruptcy Court's Electronic Case Filing System on the parties that have consented to such service.

*/s/ Hugh M Ray, III*
Hugh. M. Ray, III