## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| LEGACY RESERVES, INC., *et al.*[1] | § | Case No. 19-33395 (MI) |
| | § | |
| Debtors. | § | Chapter 11 (Jointly Administered) |
| | § | |

### EXPEDITED MOTION TO APPOINT AN OFFICIAL COMMITTEE
### OF EQUITY SECURITY HOLDERS FOR DEBTOR LEGACY RESERVES, INC.

**THIS MOTION SEEKS ENTRY OF AN ORDER THAT MAY ADVERSELY AFFECT YOU. IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY. YOU MUST FILE AND SERVE YOUR RESPONSE WITHIN 21 DAYS OF THE DATE THIS WAS SERVED ON YOU. YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED. IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING. UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING.**

**EXPEDITED RELIEF HAS BEEN REQUESTED. IF THE COURT CONSIDERS THE MOTION ON AN EXPEDITED BASIS, THEN YOU WILL HAVE LESS THAN 21 DAYS TO ANSWER. IF YOU OBJECT TO THE REQUESTED RELIEF OR IF YOU BELIEVE THAT THE EXPEDITED CONSIDERATION IS NOT WARRANTED, YOU SHOULD FILE AN IMMEDIATE RESPONSE. A HEARING WILL BE CONDUCTED ON THIS MATTER ON _____, AT _____ \_.M. IN COURTROOM 404, UNITED STATES BANKRUPTCY COURT FOR THE SOUTHERN DISTRICT OF TEXAS, 515 RUSK STREET, HOUSTON, TEXAS 77002.**

**REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEYS.**

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Legacy Reserves Inc. (9553); Legacy Reserves GP, LLC (1065); Legacy Reserves LP (1069); Legacy Reserves Finance Corporation (1181); Legacy Reserves Services LLC (2710); Legacy Reserves Operating LP (7259); Legacy Reserves Energy Services LLC (1233); Legacy Reserves Operating GP LLC (7209); Dew Gathering LLC (4482); Pinnacle Gas Treating LLC (3711); Legacy Reserves Marketing LLC (7593). The location of the Debtors' service address is: 303 W. Wall St., Suite 1800, Midland, TX 79701.

Certain of the Equity Security Holders of Debtor Legacy Reserves, Inc. aggregating in excess of 2 million shares of the Debtor's stock (the "**Equity Holders**")[2] file this *Expedited Motion to Appoint an Official Committee of Equity Security Holders for Debtor Legacy Reserves, Inc.* (the "**Motion**"),[3] which relates solely to the appointment of an equity security holders committee for Legacy Reserves, Inc. ("**Legacy**" or "**Debtor**"), and seek the entry of an order in the form attached hereto as **Exhibit "E"**. The request is based on this Motion and the accompanying Declarations of William L. Eddleman, Jr. ("**Eddleman Declaration**") and Loretta R. Cross ("**Cross Declaration**") attached hereto as **Exhibits "A" and "B", respectively**. In support of the Motion, the Equity Holders respectfully submit the following:

### I.     BASIS FOR RELIEF ON EXPEDITED BASIS

1. Pursuant to Bankruptcy Local Rule 9013-1(i), the Equity Holders request expedited consideration of this Motion. Rule 6003 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") provides that the relief requested in this Motion may be granted if the "relief is necessary to avoid immediate and irreparable harm." FED. R. BANKR. P. 6003.

2. The Debtor and its related entities (collectively, the "**Debtors**") commenced their voluntary Chapter 11 bankruptcy proceedings in the Southern District of Texas (Houston Division) on June 18, 2019. According to the Debtor's public filings and the Voluntary Petition, as discussed in more detail below, the value of the Debtor's equity, on a balance sheet basis, is no less than $280 million (valuing only the proved producing wells). Certainly, it appears that equity holders are "in the money."[4]

3. The Debtors' first day motions included a request for approval of entry into debtor-in-possession financing and use of cash collateral, which included Restructuring Support Agreements ("**RSA**") with the Debtors' creditor constituencies. The requests, which were granted on an interim basis pursuant to an order entered on June 20, 2019[5], and on a final basis

---

[2] The members of the Equity Holders consist of William L. Eddleman Jr., James Morrison, and Stephen Tsotsoros (the "**Members**"). Collectively, the Members hold or control in excess of 82,000 shares.
[3] All section references herein are to 11 U.S.C. §§ 101, *et seq.* (the "***Bankruptcy Code***").
[4] See generally Cross Declaration.
[5] See Docket No. 86.

pursuant to an order entered on July 23, 2019[6], provide for the following "milestones" in these cases:

    a. The filing of a plan of reorganization and disclosure statement no later than 150 days after the Petition Date;

    b. The approval of a disclosure statement no later than 180 days after the Petition Date; and

    c. The confirmation of a plan of reorganization no later than 210 days after the Petition Date.

4. Based on the foregoing, these cases will proceed at a lightning fast pace with confirmation likely to occur by January, 2020. On August 19, 2019, the Equity Holders contacted the Office of the U.S. Trustee requesting the formation of an official committee of equity security holders. However, the U.S. Trustee has not responded to the request as of the date of filing this Motion.

5. The Debtor has over 114 million shares outstanding with thousands of shareholders. Pursuant to the first day motions, including the Debtors' motion to waive the requirement to file a list of equity security holders[7], the Debtor admits that it has not provided notice of the bankruptcy cases and the pending proceedings to the equity holders:

> Legacy itself does not maintain a list of its equity security holders. Preparing and submitting such a list with last known addresses for each such equity security holder and sending notices to those parties individually will be expensive, time consuming, and will serve little or no beneficial purpose at this time. Accordingly, Legacy respectfully requests that the Court waive the requirements to file a list of equity holders and to provide individual notice[8].

As a result, the equity holders have not received notice, while their interests in the Debtor will be affected on a fast track basis.

6. This case is proceeding at an extremely fast pace and it is the goal of the Debtor to exit

---

[6] See Docket No. 255.
[7] See Docket No. 6.
[8] See Docket No. 6, ¶ 11.

70269480.7

bankruptcy quickly. Indeed, the Debtor's Disclosure Statement is already set for a September 10, 2019 approval hearing.[9] Furthermore, the Equity Holders understand that, even if the formation of an equity committee is ordered by the Court, it will take the U.S. Trustee time to appoint an equity committee because the U.S. Trustee will need to reach out to not only individual equity holders but (on information and belief) also brokerage houses in order to form a committee. Accordingly, to the extent an equity committee will have any chance at a meaningful impact in this case, it must be appointed sooner than later.

7. The Equity Holders submit that they have satisfied the "immediate and irreparable harm" standard of Bankruptcy Rule 6003 and, therefore, respectfully request that the Court approve the relief requested in this Motion on an expedited basis.

## II.     PRELIMINARY STATEMENT

8. On August 19, 2019, certain equity holders, through Polsinelli P.C. ("*Polsinelli*"), contacted the Office of the U,S. Trustee seeking the formation of an Official Committee of Equity Security Holders (the "*Equity Committee*")[10]. As of the date of filing this Motion, Polsinelli has received no response from the U.S. Trustee to its request seeking the formation of the Equity Committee. Based on the expedient pace of these cases and the looming September 10, 2019 Disclosure Statement approval hearing, the Equity Holders are unable to wait any longer for the U.S. Trustee to respond and the Equity Holders are left with no choice but to file this Motion to protect the interests of <u>all</u> equity holders and to avoid the harm to such equity holders which may result due to the lack of adequate representation in these cases.

9. There are two analyses the Court can conduct to determine whether it is appropriate to appoint an equity committee in the Debtor's case. *First*, the Court can look to and apply the factors outlined by Judge Lynn in the *Pilgrim's Pride* case. 407 B.R. 211 (Bankr. N.D. Tex. 2009). The Equity Holders believe that an analysis of those factors alone as set forth below

---

[9] It is not the Equity Holders intention to be obstreperous to the Debtor's confirmation process. For this reason, the Equity Holders have chosen not to object to the Disclosure Statement ahead of obtaining appointment as a committee.

[10] A true and correct copy of the August 19, 2019 letter to the U.S. Trustee is attached hereto as **Exhibit "C"**.

70269480.7

merits the appointment of an equity committee, as evidenced briefly below:

- **Solvency.** Looking at publicly available information including court documents, investor reports, investor valuations, and Securities and Exchange Commission ("*SEC*") filings, including forms 10-K, 10Q, 8-K and other public filings filed by Legacy during the fiscal year ending December 31, 2018, and Legacy's reorganization, which was effective July 2018 where preferred unit holders converted their holdings into common stock, it appears that the Debtors' total adjusted equity value is at least $280 million.[11,12] As of June 30, 2018, Legacy management had completed a successful negotiation to convert its Preferred A & B shares to common stock. At the quarter close, the common shares were trading at $6.90 a share for a value of $549.7 million and the preferred shares were worth $18.55 for the A preferred and $18.45 for the B preferred, for a total preferred value of $175.9 million. The total equity value of the enterprise was $725.6 million. On Sept. 12, 2018, Legacy was granted final approval of a merger litigation settlement agreement. This finalized the merger agreement initially announced in July 2018 where the Master Limited Partnership's equity positions were converted into a C-Corp with common shares. As of September 30, 2018, the common stock closed at a value of $4.85 a share for a total equity capitalization of $514.6 million. As of December 31, 2018, as the prospects dimmed for Legacy to extend its bank line of credit with Wells Fargo, the common stock closed at $1.54 per share, which provided an equity market capitalization of $168.5 million. An average equity market capitalization for the period June 30, 2018 through December 31, 2018, however, would have been $469.6 million. Since that time the Debtor has increased its daily production, commodity prices have declined, and the company's funded debt has increased. Factoring in these industry influences does not negatively impact the Debtors' total adjusted equity value. As of March 13, 2019, when

---

[11] Total enterprise value was analyzed using a market approach which is comparing comparable public companies with extensive holdings in the basins where the Debtors' operate reported enterprise value including proved reserves and daily production as reported for the 2018 fiscal year end applying the upper quartile of the proved reserve multiples.
[12] See Cross Declaration at ¶ 20.

Legacy announced it was exploring its "strategic alternatives" (i.e. consideration of a Chapter 11 bankruptcy filing), the common stock was trading at $1.39 per share for a total market capitalization of $159.6 million. At the end of March 2019, Legacy's common stock closed at $0.4911 per share for an equity market capitalization of $56.38 million. Based on the foregoing, Debtor is solvent and equity value exists.[13]

- **Equity Not Adequately Represented.** Pursuant to the first day motions, the Debtor entered into Restructuring Support Agreements ("**RSA**") with its creditor constituencies pursuant to which some or all the secured debt will be converted into equity of the reorganized Debtor, which will, by definition, result in dilution or elimination of existing equity interests. As a public company, Legacy has millions of shareholders. Due to the large number of shareholders, whose holdings range from one share to many shares, it is not practical or feasible to expect them to be able to adequately represent their interests in this case.

- **Complexity.** This case is complex, by definition, because the Debtor is a publicly-traded company with a very complex capital structure. The cases have complexities not ordinarily seen, which would support appointment of an equity committee.

- **Likely Cost to Estate.** Pursuant to the RSA's, the Debtors and their estates are on an expedited schedule to propose and confirm a plan of reorganization. The Disclosure Statement and Plan have already been filed. Objections to the Disclosure Statement were due September 3, 2019. The Disclosure Statement approval hearing is September 10, 2019.These are not cases that will languish in bankruptcy for months on end. Given the speed in which these cases are moving, the cost of an equity committee for the Debtor's case should not be a factor. Moreover, the Equity Holders are committed to keeping costs down by coordinating their efforts with the Official Committee of Unsecured Creditors to avoid duplication and limiting their focus to matters involving valuation.

---

[13] See Eddleman Declaration at ¶3-6.

70269480.7

- **Shares Widely Held and Actively Traded.** Legacy's common stock is listed on the NASDAQ Global Select Market under the symbol "LGCY."[14] For the 20 day trading period prior to June 18, 2019, the trading volume of the common shares was 448.2 million shares. The trading period was May 21, 2019 through June 17, 2019. The trading range was a high of $0.835 per share to a low of $0.0825 per share. As of June 17, 2019 the stock closed at $0.127 with an equity market capitalization of $14.58 million For the period since filing, June 20, 2019 through August 29, 2019, 381.8 million shares of Legacy common stock have traded in the 49 trading days. The common stock has traded in the range of a $0.125 high to a low of $0.01 per share. On August 29, 2019 the stock closed at $0.012, indicating an equity market capitalization of $1.38 million dollars.[15]

10. As outlined above, the Debtors' statements and the record before this Court, including the RSA's that will either dilute or extinguish equity, demonstrate that application of the *Pilgrim's Pride* factors in the Debtor's case merits the appointment of an equity committee.

11. ***Second***, the Court also can look to the "smell test" applied in the bankruptcy cases of *In re Energy XXI, Ltd.*, No. 16-31928 (Bankr. S.D. Tex. June 15, 2016) and *In re Horsehead Holding Corp.*, No. 16-10287 (Bankr. Del. May 2, 2016) for precedent to appoint an additional committee.

12. In the *Energy XXI* case, Judge Isgur found that the debtor was ***not*** solvent: "The evidentiary record that I have demonstrates that … the hard assets of the company … have a value far below the amount of the debt in the company."[16] Notwithstanding a clear finding of insolvency, Judge Isgur appointed an equity committee because of the dramatic drop in value from the prior year to the bankruptcy, stating: "But something stinks. And no one's going to look at it, unless they have an equity security committee or the unsecured creditors committee that's going to look at it. I know the unsecured creditors committee is going to look at it, and I

---

[14] *See* Declaration of James Daniel Wescott in Support of The Debtors' Chapter 11 Petitions and First Day Pleadings [Docket No. 2] ("**Wescott Declaration**"), ¶ 34.
[15] See Eddleman Declaration at ¶7.
[16] Transcript, June 15, 2016 [Dkt. No. 532], 163:10-17 (Southern District of Texas, Case No. 16-31928).

70269480.7

think it's their primary duty. But the equity securities holders should be able to look at that as well and try and assure that value is preserved."[17]

13. Similarly, in the *Horsehead Holding* case, Judge Sontchi minimized the solvency issue, stating: "And I'm not basing my decision on a determination as to whether there's a substantial likelihood of a recovery to equity here."[18] Instead, Judge Sontchi appointed an equity committee because of a precipitous decline in value, stating: "To put it bluntly, something doesn't smell right to the Court."[19]

14. Here, under this "smell" test, it is clear that an equity committee is appropriate. Notwithstanding all public filings showing that the Debtor is solvent and equity is "in the money", the first day pleadings indicate a framework to either dilute or eliminate existing equity in connection with debt to equity conversion. The Debtors have filed a Disclosure Statement with a Valuation Analysis prepared by its Investment Banker, Perella Weinberg Partners LP ("**PWP**"). See Exhibit F to the Disclosure Statement [Docket No. 373]. As already raised and objected to by the Official Committee of Unsecured Creditors, PWP has serious conflicts of interests resulting from its disclosed connections to the Plan Sponsors. The conflicts were deemed so material by this Court that PWP's retention has still not yet been approved. Moreover, PWP prepared a valuation on behalf of the Debtors of certain of the Noteholder Backstop Parties. These are the same parties who stand to significantly benefit at the expense of the Equity Holders if the Plan is confirmed. In its Valuation Analysis, as expected, and has become customary in these types of Chapter 11 cases (*See e.g. In re Bristow Group, Inc.*, 19-32713 (DRJ) and *In re PHI, Inc.*, 19-30923- hdh11), PWP has "estimated a range of total enterprise value (the 'Enterprise Value') and implied equity value (the 'Equity Value') of the Reorganized Debtors" that renders the Debtors insolvent such that the Debtors survival will depend on the elimination, or substantial dilution, of existing equity through conversion of debt into equity of the

---

[17] Transcript, June 15, 2016 [Dkt. No. 532], 164:9-16 (Southern District of Texas, Case No. 16-31928).
[18] Transcript, May 2, 2016 [Dkt. No. 862], 100:21-25 (District of Delaware, Case No. 16-10287).
[19] Transcript, May 2, 2016 [Dkt. No. 862], 100:25-101:1 (District of Delaware, Case No. 16-10287) ("And there was a sudden and precipitous decline in value that occurred at the time on or about the filing of the bankruptcy.").

reorganized Debtor. An Equity Committee is necessary to investigate the Debtor's actions and conduct its own valuation of the Debtors' assets and business operations to ensure that this reorganization is carried out in the best interest of all constituents and not a select few including, without limitation, converting dormant, underutilized and/or non-core assets into cash, to improve the Debtors' balance sheet cash which is an integral component of enterprise value that is otherwise not captured for the benefit of the estates and their constituents.

15. Moreover, as discussed in the accompanying Eddleman Declaration, investigation is necessary with respect to the unusual prepetition conduct of the Debtors' Board of Directors with respect to, at least, the following issues to ensure that the Board's fiduciary duties were properly discharged:

- The inherent conflicts of interest between the Debtor's CEO and GSO Capital Partners L.P., and the RSAs with certain of the Debtors' creditors that may dilute or eliminate existing equity in favor of converting such creditors debt into equity in the Reorganized Debtor.

16. The Equity Holders believe that appointment of an equity committee is appropriate under the applicable *Pilgrim's Pride* multi-factor test.

### III.  BACKGROUND

**A. The Debtors**

17. Legacy's common stock is listed on the NASDAQ Global Select Market under the symbol "LGCY." On April 26, 2019, Legacy received written notice from NASDAQ notifying Legacy that its common stock closed below the $1.00 minimum bid price required by NASDAQ Listing Rule 5450(a)(1) for 30 consecutive business days. The notice had no immediate effect on the listing or trading of Legacy's common stock.[20]

18. According to the Wescott Declaration[21], the Debtors engage in the development, production, and acquisition of oil and natural gas properties. Debtors' operations are focused on the horizontal development of unconventional plays in the Permian Basin and the cost-efficient management of shallow-decline oil and natural gas wells in the Permian Basin, Rocky Mountain, and Mid-Continent regions. The Debtors are headquartered in Midland, Texas, and, as of the petition date, employed 327 individuals.

19. With regard to the Debtor's stock, as reflected in the Debtor's 10-Q for the quarterly period ended June 30, 2019, as of June 30, 2019, 114,810,671 shares of LGCYQ's $0.01 par value common stock were outstanding.[22]

20. As of June 17, 2019, the trading day immediately prior to the Petition Date, Debtor's market cap was as high as $14.58 million.  Moreover, from June 20, 2019 through August 29, 2019, 381.8 million shares of Legacy common stock have traded in the range of $0.125 to $0.01 per share. On August 29, 2019, the stock closed at $0.012, indicating an equity market capitalization of $1.38 million dollars.[23]

**B. The Debtors' Public Filings and Bankruptcy Filings**

21. According  to the Debtor's latest filed 8-K with the SEC (dated June 24, 2019), the Debtor admits that equity interests will be impacted by this bankruptcy and developments herein:

---

[20] See Wescott Declaration at ¶ 34.
[21] See Wescott Declaration at ¶ 6.
[22] See Eddleman Declaration at ¶ 8.
[23] See Eddleman Declaration at ¶ 7.

70269480.7

"Legacy expects there will be no recovery for any equity holder in the Chapter 11 Cases. Accordingly, Legacy urges extreme caution with respect to existing and future investments in its common stock."[24]

22. In connection with the first day motions, the Wescott Declaration describes the RSA's as a "financial restructuring that will right-size the Debtors' capital structure and provide the necessary go-forward liquidity to permit them to compete and grow in today's challenging oil and gas environment."[25] The Debtors further state that a chapter 11 restructuring affords Debtors the ability to maximize the value of their estates for the benefit of all stakeholders."[26] Yet, nowhere are the Equity Holders represented or given a voice. The equity holders are stakeholders and must be involved in these cases as part of the Debtors' efforts to maximize value for all stakeholders.

## IV.   REQUESTED RELIEF

23. By this Motion, the Equity Holders seek the appointment of an equity security holders committee. Bankruptcy Code section 1102(a)(2) provides that "[o]n request of a party in interest, the court may order the appointment of ... committees of creditors or of equity security holders if necessary to assure adequate representation of creditors *or of equity security holders*. The U.S. Trustee shall appoint any such committee." 11 U.S.C. § 1102(a)(2) (emphasis added). Although section 1102 does not define "adequate representation," prior precedent in the Northern District of Texas, generally consider the following factors:

- Whether the debtor is likely to prove solvent;
- Whether equity is adequately represented by stakeholders already at the table;
- The complexity of the debtors' cases;
- The likely cost to the debtors' estates of an equity committee; and

---

[24] See **Exhibit "D"** hereto.
[25] See Wescott Declaration, at ¶ 10. [Docket No. 2].
[26] See Docket No. 17, at ¶ 1.

11

70269480.7

- The extent the debtor's shares are widely held and actively traded.

*In re Pilgrim's Pride Corp.*, 407 B.R. 211, 216, n. 13 (Bankr. N.D. Tex. 2009). Importantly, this list is neither exhaustive nor mandatory, as discussed below in the context of the cases of *In re Energy XXI, Ltd No. 16-31928 (Bankr. S.D. Tex. June 15, 2016) and In re Horsehead Holding Corp., No. 16-10287 (Bankr. Del. May 2, 2016)*.

24. Congress recognized the vulnerability of public investors in chapter 11 bankruptcy cases when it provided for the ability to seek appointment of additional committees of equity security holders in section 1102(a)(2). The legislative history of section 1102 indicates that Congress understood the important purpose an equity committee could serve "to counteract the natural tendency of a debtor in distress to pacify large creditors, with whom the debtor would expect to do business, at the expense of small and scattered investors." S. Rep. No. 95-989, at 10 (1978).

25. As a result, official committees of equity security holders have been appointed in many chapter 11 cases in this circuit and district. *See, e.g.*, *In re Pilgrim's Pride Corp.*, Case No. 08-45664 (Bankr. N.D. Tex. 2008); *In re Gadzooks, Inc.*, Case No. 04-31486 (Bankr. N.D. Tex. 2004); *In re Mirant Corp.*, Case No. 03-46590 (Bankr. N.D. Tex. 2003); *In re ADPT DFW Holdings, LLC*, Case No. 17-31432 (Bankr. N.D. Tex. 2017); *In re Energy XXI Ltd.*, No. 16-31928 (Bankr. S.D. Tex. 2016); *In re Stone Energy Corp.*, Case No. 16-36390 (Bankr. S.D. Tex. 2016); *In re Spectrum Jungle Labs Corp.*, Case No. 09-50455 (Bankr. W.D. Tex. 2009).

26. While there is compelling evidence of solvency in this matter, notably, two recent courts have found that the likelihood of solvency is ***not*** necessary for the appointment of an equity committee. *See In re Energy XXI, Ltd*., No. 16-31928 (Bankr. S.D. Tex. June 15, 2016); *In re Horsehead Holding Corp*., No. 16-10287 (Bankr. Del. May 2, 2016). In lieu of a finding of likely solvency, the *Energy XXI* and *Horsehead Holding* courts found factors such as the following to warrant appointment of an equity committee: third-party releases of shareholder claims against insiders, unfair discrimination against shareholders, alleged misrepresentations to shareholders, and discrepancies in the prepetition and the post-petition valuation of the enterprise

value.[27] In their rulings, the courts acknowledge the *Pilgrim's Pride* factors, specifically the requirement of a finding of solvency, and expressly declined to follow case law that states a finding of likely solvency is required for the appointment of an equity committee.

27. The *Pilgrim's Pride* factors—when viewed in light of the facts herein, relevant case law and the *Horsehead Holdings* and *Energy XXI* proceedings—weigh heavily in favor of the appointment of a committee of equity security holders.

### A. Not Hopelessly Insolvent

28. In general, the applicable legal standard is ***not*** whether a debtor is solvent, but rather whether a debtor "appears to be hopelessly insolvent." *In re Williams Commc'ns Group, Inc.*, 281 B.R. 216, 220 (Bankr. S.D.N.Y. 2002); *In re Emons Indus., Inc.*, 50 B.R. 692, 694 (Bankr. S.D.N.Y. 1985). Thus, an equity committee would theoretically be appropriate even if the Debtor appeared slightly insolvent. *See In re Wang Labs., Inc.*, 149 B.R. 1, 7 (Bankr. D. Mass. 1992) (appointing an equity committee even where the debtor had negative book equity of several hundred million dollars); *In re Adelphia Commc'ns Corp.*, 368 B.R. 140, 149 (Bankr. S.D.N.Y. 2007) ("When it looked like there ***might*** also be sufficient value in the estate to provide recoveries to equity holders," an equity committee was appointed.) (emphasis added).

29. "[T]here is no clear litmus test" in determining a debtor's solvency. *Williams Commc'ns*, 281 B.R. at 220. Instead, it is a "practical conclusion, based on a confluence of factors." *Id*. at 221. In *Pilgrim's Pride*, Judge Lynn did reference that "[t]he value of Debtors will ultimately be determined based on their ability to generate cash flow." 407 B.R. at 216-17.

30. Furthermore, the observations from the *Exide Technologies* ruling on appointment of an equity committee are also instructive when determining what it means to be "hopelessly insolvent", as excerpted below:

> It should be noted that the [appearance of hopeless insolvency] test does not envision that old equity will make a full recovery. Nor does the test envision that all debts will be paid in full, in cash, at confirmation. Many debts can be deferred

---

[27] See Transcript, June 15, 2016 [Dkt. No. 532], 161-169 (Southern District of Texas, Case No. 16-31928); Transcript, May 2, 2016 [Dkt. No. 862], 100-103 (District of Delaware, Case No. 16-10287).

13

70269480.7

> to be paid over a period of time.  Also, it is quite customary for plans to provide some debt to be extinguished by the issuance of stock in the [re]organized debtor. These procedures often leave room for some recovery for old equity.

*See In re Exide Technologies,* Oral Opinion, Case No. 02-11125 (JCA) (Bankr. D. Del. Sept. 23, 2002).

31. COLLIER ON BANKRUPTCY stated the following: "If the debtor has a business that is basically sound, but has sought chapter 11 due to excess indebtedness, the case is most likely to involve negotiations over who gets what under the plan.  In such a case, equity security holders deserve a committee to represent their interests in the process." COLLIER ON BANKRUPTCY, ¶¶ 1102.03[2][b].

32. Other evidence of solvency includes the following:

- **Market Cap.** As of June 17, 2019, the trading day immediately prior to the Petition Date, Debtor's market cap was as high as $14.58 million.  Moreover, from June 20, 2019 through August 29, 2019, 381.8 million shares of Legacy common stock have traded in the range of $0.125 to $0.01 per share. On August 29, 2019, the stock closed at $0.012, indicating an equity market capitalization of $1.38 million dollars.[28]

### B. Lack of Adequate Representation

33. An equity security holders committee must be appointed because the interests of the Debtor's shareholders are not otherwise adequately represented in these chapter 11 cases. Without an equity security holders committee, there is no constituency responsible or appropriately incentivized to protect, maintain and maximize the value of the equity of the Debtor.

34. But what about the Creditors Committee?  Judge Lynn said it best when he opined that "[w]hile it is true . . . that shareholders and unsecured creditors often have common interests . . ., when it comes to valuation and determination of future capital structure for plan purposes . . ., their agendas are likely to be very much at odds." *Pilgrim's Pride*, 407 B.R. at 217, n.17.

35. Then what about the Board of Directors and management? As discussed above, the Board

---

[28] See Eddleman Declaration at ¶ 7.

has taken (or failed to take) pre-petition action which suggest that the Board is not operating with a goal to protect the interest of its stakeholders. Moreover, the RSA's, entered into by the Debtors pursuant to instructions of the Board of Directors and management, indicate an intent to dilute or cancel existing equity interests.

36. In the *Pilgrim's Pride* case, Judge Lynn also noted the difficult negotiations a board must endure when navigating a chapter 11 bankruptcy, stating:

> While it is unquestionably true that Debtors' officers and directors have a duty to maximize Debtors' estates to the benefit of shareholders as well as creditors . . . the reorganization process is not so simple that that ensures shareholders are adequately represented by even equity-owning management. The principal concern of Debtors and their managers … must be preservation of Debtors' going concern value and their successful emergence from chapter 11. That will occur through confirmation of a plan of reorganization. Confirmation of a plan, in turn, is heavily dependent upon Debtors reaching an accord with the UCC and the Banks. Given Code § 1129(a)(10), confirmation of a plan will likely require the support of the unsecured creditors, the Banks or CoBank. As this court has had occasion to note . . . it is hardly likely that the UCC or the Banks will be disposed to value Debtors so liberally that equity may be sure to receive its due.

*Pilgrim's Pride*, 407 B.R. at 218 (internal citations omitted).

Neither the Creditors Committee nor the Debtors' Board of Directors will adequately represent the interests of equity security holders in these cases.

### C. Complexity of the Case

37. It is undisputable that these are complex cases. As a publicly-traded company, the case is complex enough to merit an equity committee. *See* COLLIER ON BANKRUPTCY, ¶ 1102.03[02] ("Appointment is generally only appropriate in chapter 11 cases involving corporations with publicly traded stock. […] Only in larger corporations is the divergence of interest between management and stockholders such that an equity committee is warranted."). In addition, the Debtors have a complex capital structure with several issuances of secured and unsecured debt, not including unsecured trade debt. On these facts alone, there is no question that the Debtors' cases are complex.

15

**D. Cost to the Debtor's Estate**

38. Although all parties herein, along with the Court, should remain mindful of concerns regarding the additional expense associated with the formation of an equity committee, "[c]ost alone cannot, and should not, deprive . . . security holders of representation." *In re McLean Indus., Inc.*, 70 B.R. 852, 860 (Bankr. S.D.N.Y. 1987). Instead, the Court should employ a balancing test to weigh the cost of an equity committee against concerns regarding adequate representation. *See, e.g., In re Pilgrim's Pride*, 407 B.R. at 221; *Williams Commc'ns*, 281 B.R. at 220. Once the need for adequate representation is established, "the burden shifts to the opponent of the motion [to appoint an official equity committee] to show that the cost of the additional committee sought significantly outweighs the concern for adequate representation and cannot be alleviated in other ways." *In re Beker Indus. Corp.*, 55 B.R. 945, 949 (Bankr. S.D.N.Y. 1985).

39. Furthermore, the costs should be limited in this case given the Debtors' fast track to an exit from bankruptcy and the Equity Holders' commitment to coordinating efforts with the Official Committee of Unsecured Creditors. If needed, the Court also can certainly impose such restrictions and conditions it deems necessary to avoid unnecessary duplication of work and to quell any concerns about rampant billing by any counsel or professionals to the equity committee. That was the approach Judge Lynn adopted in the *Pilgrim's Pride* case. 407 B.R. 211, 221-222 (Bankr. N.D. Tex. 2009) ("Outside of valuation, negotiation of a plan and the plan confirmation process (and communicating with equity owners), the court expects the equity committee will limit its involvement in these cases to matters where its interests are at odds with those of the UCC."). Here, the benefit of an equity security holders committee to protect the interests of the Debtor's estate and its constituents clearly outweigh the anticipated limited cost.

**E. Whether Shares Are Widely Held and Actively Traded**

40. Legacy's common stock is listed on the NASDAQ Global Select Market under the symbol "LGCY."[29] The Debtor has 945,000,000 authorized shares, 114,810,671 million of

---

[29] *See* Declaration of James Daniel Wescott in Support of The Debtors' Chapter 11 Petitions and First Day Pleadings [Docket No. 2] ("**Wescott Declaration**"), ¶ 34.

70269480.7

which remain outstanding as of June 30, 2019. For the 20 day trading period prior to June 18, 2019, the trading volume of the common shares was 448.2 million shares. The trading period was May 21, 2019 through June 17, 2019. The trading range was a high of $0.835 per share to a low of $0.0825 per share. As of June 17, 2019 the stock closed at $0.127 with an equity market capitalization of $14.58 million For the period since filing, June 20, 2019 through August 29, 2019, 381.8 million shares of Legacy common stock have traded in the 49 trading days. The common stock has traded in the range of a $0.125 high to a low of $0.01 per share. On August 29, 2019 the stock closed at $0.012, indicating an equity market capitalization of $1.38 million dollars. The Debtor's shares are widely held and actively traded.[30]

### F. *Energy XXI* and *Horsehead Holding* "Smell" Test

41. To be sure, the Equity Holders believe appointment of a committee is appropriate under the above listed *Pilgrim's Pride* factors. Furthermore, application of the "smell" test precedent set in the *Energy XXI* and *Horsehead* courts also merits appointment of an equity security holders committee due to the unusual prepetition conduct of the Debtors' Board of Directors, including the inherent conflicts of interest between the Debtor's CEO and GSO Capital Partners L.P. (as more particularly described below), and the RSAs with certain of the Debtors' creditors that may dilute or eliminate existing equity in favor of converting such creditors debt into equity in the Reorganized Debtor. James Daniel Westcott is the Chief Executive Officer of Legacy. Prior to joining Legacy, Mr. Westcott served as a Principal at GSO Capital Partners LP, a division of The Blackstone Group L.P. ("GSO"). D. Dwight Scott is the President and Senior Managing Director of GSO and was a member of the Board of Directors of the Debtor from November 15, 2016 until his resignation within the last 6-8 months. GSO is the second lien holder who will ultimately own most of the Debtor post confirmation.

42. Maybe there is a good and sound explanation for the Debtors' conduct—but maybe there is not. At this stage of the case, it is anyone's guess. As this Court opined in the *Energy XXI*

---

[30] See Eddleman Declaration, at ¶ 7-8.

case: "[T]he equity securities holders should be able to look at that as well and try and assure that value is preserved."[31]

## V.   CONCLUSION

The Debtor's most recent financial filing with the SEC indicates equity value is at least $280 million.  The Debtor's equity remained actively traded through the bankruptcy filing, and continues to actively trade today with an indicated market capitalization of approximately $1.38 million as of August 29, 2019.  Yet the Debtor's post-petition 8-K advises that "there will be no recovery for any equity holder in the Chapter 11 Cases."  This foreshadowing is made worse by the fact that the Debtors entered into RSA's which appear to provide no value on equity due to the debt to equity conversion provisions contained therein.

There is nothing ordinary about these complex cases, the actions taken and the structures put in place by the Debtors' Board of Directors and management. Such actions and structures require special scrutiny from the Debtors' equity security holders who have the most to lose in these cases. An official committee is necessary to provide that special scrutiny and to insure that equity security holders have adequate representation in these cases.

**WHEREFORE,** the Equity Holders respectfully request this Court (a) grant this Motion, (b) enter an order directing the U.S. Trustee to appoint an official committee of equity holders, and (c) grant the Equity Holders such other and further relief to which it may be justly entitled, both at law and equity.

Dated: September 6, 2019

Respectfully Submitted,
POLSINELLI PC

By:  /s/ Trey A. Mounsour
Trey A. Monsour (SBN 14277200)
POLSINELLI PC
1000 Louisiana Street Suite 6400

---

[31] *See* Transcript, June 15, 2016 [Dkt. No. 532], 164:15-16 (Southern District of Texas, Case No. 16-31928);

Houston, Texas 77002
Telephone: (713) 374-1643
Facsimile No.: (713) 374-1601
*tmonsour@polsinelli.com*

*and*

Randye B. Soref (Pro Hac Pending)
Tanya Behnam (Pro Hac Pending)
POLSINELLI, LLP
2049 Centuyry Park East, Suite 2900
Los Angeles, CA 90067
Telephone: (310) 556-1801
Facsimile No. (310) 556-1802
*rsoref@polsinelli.com*
*tbehnam@polsinelli.com*

**ATTORNEYS FOR MOVANTS**

## **Certificate of Service**

I, Trey A. Monsour, do hereby certify that on this 6 day of September, 2019, this Motion was served on all parties entitled to service under the Court's ECF system.

>*/s/ Trey A. Monsour*
>Trey A. Monsour

20

70269480.7