IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| LEGACY RESERVES INC., *et al.*,[1] | ) Case No. 19-33395 (MI) |
| | ) |
| | ) (Jointly Administered) |
| Debtors. | ) |
| | ) **Ref Dkt. No. 523** |
| | ) |
| | ) Hearing Date:  October 18, 2019 at 10:00 a.m. (CT) |
| | ) Objection Deadline:  October 11, 2019 at 5:00 p.m. (CT) |

**OBJECTION OF THE OFFICIAL
COMMITTEE OF UNSECURED CREDITORS TO DEBTORS'
MOTION FOR ENTRY OF AN ORDER TO EXTEND THEIR EXCLUSIVE
PERIODS TO FILE A CHAPTER 11 PLAN AND SOLICIT ACCEPTANCES THEREOF**

The Official Committee of Unsecured Creditors (the "**Committee**"), duly appointed in the Chapter 11 cases of Legacy Reserves Inc. and its affiliated debtors and debtors-in-possession (collectively, the "**Debtors**"), submits this objection (the "**Objection**") to the *Debtors' Motion For Entry Of An Order To Extend Their Exclusive Periods To File A Chapter 11 Plan And Solicit Acceptances Thereof* [Docket No. 523] (the "**Motion** ").[2]  In support of this Objection, the Committee respectfully states as follows:

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are:  Legacy Reserves Inc. (9553); Legacy Reserves GP, LLC (1065); Legacy Reserves LP (1069); Legacy Reserves Finance Corporation (1181); Legacy Reserves Services LLC (2710); Legacy Reserves Operating LP (7259); Legacy Reserves Energy Services LLC (1233); Legacy Reserves Operating GP LLC (7209); Dew Gathering LLC (4482); Pinnacle Gas Treating LLC (3711); Legacy Reserves Marketing LLC (7593). The location of the Debtors' service address is: 303 W. Wall St., Suite 1800, Midland, TX 79701.

[2] Capitalized terms used in this Objection but not otherwise defined shall have the meaning ascribed to them in the Motion or the Plan, as applicable.

**PRELIMINARY STATEMENT**

1. The Debtors commenced these cases on June 18, 2019, with a GSO-sponsored RSA in hand outlining the framework for a "consensual" plan of reorganization in order to "expeditiously emerge from these chapter 11 cases." Westcott First Day Decl. ¶ 11. The Debtors now have an approved Disclosure Statement and are soliciting the Plan on file. The Debtors believe the Plan will be confirmed before the expiration of the Exclusive Period. However, through the Motion, and without sufficient bases, the Debtors seek to alter the periods of exclusivity to file a plan of reorganization ("**Exclusive Filing Period**") and solicit acceptances thereof ("**Exclusive Solicitation Period**") (collectively, the "**Exclusive Periods**"). The relief requested in the Motion should be denied for the following reasons.

2. <u>First</u>, for the last three months, the Debtors and GSO Capital Partners LP ("**GSO**") have consistently asserted that this case **must** proceed on a fast-track or else the case would fail due to lack of support from the parties to the RSA (the Ad Hoc Group of Noteholders, the RBL Lenders, and GSO as Term Loan Lender). At the first day hearing, Debtors' counsel urged the Court to adhere to the rushed timeline pursuant to the RSA and said, "[w]e have a deal. We would like to execute it in quick fashion and save money and get the company on the path to redemption as soon as possible. So this timeline was heavily negotiated.". Similarly, at the final hearing on the DIP Motion, the Debtors urged the Court not to delay entry of the Final DIP Order so the Debtors could remain "on pace to meet [the] milestones." The Debtors' CEO, James Daniel Westcott, made clear that he understood "the [RSA] parties, in order to . . . commit . . . capital need to make sure that the case is proceeding in a prudent fashion and that they're not just keeping their fingers crossed and hoping." Moreover, GSO, the Plan Sponsor, has consistently argued that "the Confirmation Order **must** be entered within 60 days after entry of

the Disclosure Statement Order [and] any failure to satisfy the Global RSA's milestones will permit the applicable parties to terminate the Global RSA and related agreements." (emphasis added).  At the hearing on the Disclosure Statement, Counsel to GSO reiterated: "we'd like to emphasize our support for the Debtors moving forward with the confirmation hearings on a timeline that enables them to reach the milestones under the RSA."  Now, without any evidence, and contrary to the Debtors and GSO's case-theme, the Debtors request an extension of the Exclusive Period "out of an abundance of caution."

3.  <u>Second</u>, the Debtors should not be allowed to foreclose the option of viable alternative plans because of the risk the Plan may not be confirmed.  The Debtors' motivation for an extension is to "preserve their exclusive right to both prosecute the Plan currently on file and file and solicit a new plan of reorganization should unforeseen issues arise with respect to confirmation."  An extension should not be used as a tactic to pressure creditors by boxing out any competition.  **The Debtors fail to articulate why they should be the only party given the opportunity to file a plan after the Exclusive Periods end**.  If the Debtors' Plan is rejected, the Committee, or any party in interest, should have the option to file a plan.[3]

4.  <u>Third</u>, given that a Plan is already on file, the Disclosure Statement has been approved, and the Exclusive Solicitation Period does not expire until December 15, 2019, the Debtors have not shown any harm or prejudice resulting from leaving the *status quo* unaltered and allowing exclusivity to expire.

5.  <u>Finally</u>, the Debtors bear the affirmative burden of establishing that "cause" exists to alter the Exclusive Periods.  In this case, the Motion lacks sufficient evidence to support an

---

[3] As the Court is aware, the Committee opposes the Plan and has issued a letter urging Class 5 Claim Noteholders to reject the Plan. See **Exhibit A**, Committee Letter.

3

alteration of the Exclusive Periods. Accordingly, no cause exists for extending the Exclusive Periods and the Motion must be denied.

## BACKGROUND

6. On June 18, 2019 (the "**Petition Date**"), each of the Debtors filed voluntary petitions under Chapter 11 of the Bankruptcy Code. The Debtors remain in possession of their assets. On July 3, 2019, the Office of the United States Trustee appointed the Committee. Neither a Trustee nor an Examiner has been appointed in these cases.

7. On August 2, 2019, the Debtors filed the *Joint Chapter 11 Plan Of Reorganization For Legacy Reserves Inc. And Its Debtor Affiliates* [Docket No. 342] and the *Disclosure Statement for the Joint Chapter 11 Plan of Reorganization for Legacy Reserves Inc. and Its Debtor Affiliates* [Docket No. 343]. The Debtors subsequently filed revised versions of the Plan and Disclosure Statement on August 18, 2019 [Docket Nos. 372, 373], September 9, 2019 [Docket Nos. 453, 454], and September 16, 2019 [Docket Nos. 488, 489]. On September 16, 2019, the Court approved the Disclosure Statement and Solicitation Procedures [Docket No. 494]. The Plan Conformation hearing is set for November 6, 2019.

8. The expiration date of the Debtors' 120-day Exclusive Filing Period pursuant to 11 U.S.C. § 1121(b) is October 16, 2019. The expiration date of the Debtors' 180-day Exclusive Solicitation Period pursuant to 11 U.S.C. § 1121(c)(3) is December 15, 2019.

## OBJECTION

**I. Applicable Legal Standard.**

9. Bankruptcy Code Section 1121 enables the debtor to lead plan efforts for some period of time, but not *ad infinitum*.[4] See In re Gibson & Cushman Dredging Corp., 101 B.R.

---

[4] See also Bankruptcy Act Revision, Serial No. 27, Part 3, Hearings on H.R. 31 and H.R. 32, 94th Cong. 2d Sess. (March 29, 1976) ("Of course, the bargaining position of the debtor under present Chapter XI may be

4

405, 409 (Bankr. S.D.N.Y. 1989) ("[A] Court considering an alteration of the exclusivity period must consider the general reason for the enactment of Section 1121. Prior to the enactment of Section 1121 a debtor enjoyed the exclusive right to propose a plan of reorganization throughout the bankruptcy proceeding. Section 1121 was passed to place limits on the debtor's exclusive right to propose a plan and in recognition of the creditor's stake in the debtor's business."); In re Washington-St. Tammany Elec. Co-op., Inc., 97 B.R. 852, 855 (Bankr. E.D. La. 1989) ("Congress enacted 11 U.S.C. Sec. 1121 in order to limit the debtor's exclusive rights to file a plan to clearly defined periods.") (citing In re Jasik, 727 F.2d 1379, 1382 (5th Cir.), reh'g denied, 731 F.2d 888 (1984).

10. A request to extend exclusivity is a serious, rather than "routine," matter. See In re Southwest Oil Company of Jourdantown, Inc., 84 Bankr. 448, 450 (Bankr. W.D. Tex. 1987) ("[a] court considering a motion to extend the 120–day period, during which the debtor has an exclusive right to file a plan of reorganization, should not routinely grant an extension."); In re McLean Indus., Inc., 87 B.R. 830, 834 (Bankr. S.D.N.Y. 1987) ("[e]xtensions are not to be granted neither routinely nor cavalierly"); In re Grossinger's Assocs., 116 B.R. 34, 36 (Bankr. S.D.N.Y. 1990) (same). A party seeking to extend exclusivity must make an affirmative showing of cause, supported by evidence. See In re New Millennium Mgmt., LLC, 2014 WL 792115, at *6 (Bankr. S.D. Tex. 2014) (citing In re Borders Group, Inc., 460 B.R. 818 (Bankr. S.D.N.Y. 2011)); In re Simbaki, Ltd., 522 B.R. 917, 920 (Bankr. S.D. Tex. 2014) (Isgur) ("Section 1121(d) provides that . . . the court may for cause reduce or increase the 120–day

---

further enhanced by the debtor's control of the business . . . . The take-it-or-leave-it attitude on the part of debtors as permitted by Chapter XI is fraught with potential abuse. The granting of authority to creditors to propose plans of reorganization and rehabilitation serves to eliminate the potential harm and disadvantages to creditors and democratizes the reorganization process.").

5

period" (small business case)); In re Mirant Corp., 2004 WL 2250986, at *2 (N.D. Tex. 2004) ("the burden is on the debtor to show cause for extending the exclusivity period").

11. The jurisprudence analyzing what may constitute "cause" relies on the following non-exclusive elements: (i) the size and complexity of the case; (ii) the necessity for sufficient time to permit the debtor to negotiate a plan of reorganization and prepare adequate information; (iii) the existence of good faith progress toward reorganization; (iv) the fact that the debtor is paying its bills as they become due; (v) whether the debtor has demonstrated reasonable prospects for filing a viable plan; (vi) whether the debtor has made progress in negotiations with its creditors; (vii) the amount of time which has elapsed in the case; (viii) whether the debtor is seeking an extension of exclusivity to pressure creditors to submit to the debtor's reorganization demands; and (ix) whether an unresolved contingency exists. See, e.g., New Millennium Mgmt. at *6 (listing factors relevant to whether "cause" exists to extend exclusivity periods); *see also* Vol. 7 COLLIER ON BANKRUPTCY ¶1121.06[2] (Richard Levin & Henry J. Sommer eds., 16th ed.); In re Texaco, 81 B.R. 806, 812 (Bankr. S.D.N.Y. 1988).

12. What these elements really boil down to is: are the debtors doing a good job and do we have faith that, extrapolating from the past into the future, it is a good idea to continue the imbalance between debtors and their creditors that naturally exists where a debtor has an exclusive right to file a plan. See In re Timbers of Inwood Forest Assocs., Ltd., 808 F.2d 363, 372 (5th Cir. 1987) (en banc), aff'd 484 U.S. 265 (1988) ("[W]e think that any bankruptcy court involved in an assessment of whether 'cause' exists should be mindful of the legislative goal behind § 1121. The bankruptcy court must avoid reinstituting the imbalance between the debtor and its creditors that characterized proceedings under the old Chapter XI. Section 1121 was designed, and should be faithfully interpreted, to limit the delay that makes creditors the hostages

of Chapter 11 debtors."); see also In re Dow Corning Corp., 208 B.R. 661, 670 (Bankr. E.D. Mich. 1997) ("[T]he primary consideration should be whether or not [terminating exclusivity] would facilitate moving the case forward."); In re R.G. Pharmacy, Inc., 374 B.R. 484, 488 (Bankr. D. Conn. 2007) (cause did not exist to extend exclusivity where there was a "breakdown of negotiations between the debtor and the objecting creditors" and the debtor failed to show that extension was "likely to significantly improve the progress of the case").

## II. The Debtors Have Failed To Meet It's Burden For An Extension Of The Exclusive Periods To Be Granted.

13. Here, the factors to be considered by this Court militate against extending the Exclusive Periods.

14. *Factor 1 - Size and Complexity*: This factor weighs in favor of an extension of exclusivity only in cases involving "**unusually large**" companies. H.R. Rep. No. 95-595, at 232 (1977), reprinted in 1978 U.S.C.C.A.N. 5963, 6191) (emphasis added); *see, e.g.*, *In re Adelphia Commc'ns Corp.,* 352 B.R. 578, 587 (Bankr. S.D.N.Y. 2006) (finding extension appropriate in case of "unprecedented complexity and overwhelming size" involving, *inter alia*, "231 debtors, 6 different prepetition credit facilities, approximately 30 issuances of outstanding public indebtedness . . . , SEC and DOJ investigations and settlements, . . . the effect of massive prepetition fraud of [] management"). The Debtors fail to explain why this case is "unusually" complex in the context of chapter 11 filings.

15. Further, in support of factor 1, the Debtors cite to In re Express One Int'l, Inc., 194 B.R. 98, 100 (Bankr. E.D. Tex. 1996) and state "the traditional ground for cause is the large size of the debtor **and the concomitant difficult in formulating a plan of reorganization**[.]" Motion ¶ 7 FN 10 (emphasis added). Since the Petition Date, the Debtors have consistently lauded the support of GSO, the RBL Lenders and the Ad Hoc Group of Noteholders in

7

formulating a pre-petition framework for "a consensual plan of reorganization in order to expeditiously emerge from these chapter 11 cases." *Declaration Of James Daniel Westcott In Support Of The Debtors' Chapter 11 Petitions And First Day Pleadings* [Docket No. 2] (the "**Westcott First Day Decl.**"), ¶ 55. Early in this case, the Debtors also made clear that "the terms of the Plan [would] be entirely consistent with the terms of the Restructuring Support Agreement [finalized pre-petition]" *Debtors Reply to Committee's Objection to the BCA Motion* [Docket No. 308]. The Debtors have a plan on file and believe it will be confirmed before the expiration of the Exclusive Periods. See Motion ¶ 9. Now, without adequate support, the Debtors request more time to exclusively file a plan "out of an abundance of caution". See id.. In sum, the Debtors have failed to articulate the complexities necessitating an extension of the Exclusive Periods. Accordingly, this factor weighs against granting the Motion.

16. *Factor 2 – Necessity of Further Time To Negotiate a Chapter 11 Plan and Prepare Adequate Information*: Here, there is no necessity whatsoever for further time to prepare a plan and disclosure statement, as these materials **have already been filed** with this Court and were negotiated pre-petition as part of the RSA. Accordingly, this factor weighs against granting the Motion.

17. *Factor 3 – Good Faith Progress Towards Reorganization*: Courts typically apply this factor in cases where the debtor has yet to file a plan. See e.g., Borders Grp, 460 at 826 (discussing whether debtors have worked with committee on draft plan proposals); In re GMG Capital Partners III, L.P., 503 B.R. 596, 602 (Bankr. S.D.N.Y. 2014) (discussing whether debtor made good faith progress towards "proposing a viable plan"). The Plan and Disclosure Statement have already been filed. Accordingly, this factor is inapplicable, and does not weigh in favor of granting the Motion.

18. *Factor 4 – Whether Debtor is Paying Bills as they Become Due*: The Debtors state that they are paying their bills as they come due and rely on the most recent monthly operating report. See Docket No. 403. Discovery related to Plan Confirmation, which includes a thorough review of the Debtors' finances and monthly operating reports, is ongoing. Accordingly, this factor is neutral and does not weigh in favor of granting the Motion

19. *Factor 5 – Reasonable Prospects of Filing a Viable Plan*: A Plan and Disclosure Statement have already been filed, rendering this factor inapplicable. The Motion does not raise any argument relating to this factor. Accordingly, this factor does not weigh in favor of granting the Motion.

20. *Factor 6 – Progress in Negotiations with Creditors*: A Plan and Disclosure Statement have already been filed, rendering this factor inapplicable. The Motion does not raise any argument relating to this factor. Accordingly, this factor does not weigh in favor of granting the Motion.

21. *Factor 7 – Amount of Time Elapsed*: One hundred and fifteen days have passed since the Petition Date. However, that is not a short amount of time in the context of the rapid-fire milestones the Debtors and GSO have pushed in these cases. Although this is the Debtors' first request for an extension, the Debtors and GSO have repeatedly harped on the need to conclude these cases in an expedited fashion. See Hearing Transcript 23:19-23, June 20, 2019 (In response to the Court's questions at the first day hearing about the fast pace of the case, Debtors' counsel stated: "[w]e have a deal. We would like to execute it in quick fashion and save money and get the company on the path to redemption as soon as possible. So this timeline was heavily negotiated."); Hearing Transcript 14:9-10, July 23, 2019 (Debtors requesting that the Court avoid any delay in entering the DIP Order so that the Debtors remain "on pace to meet

9

milestones."); Hearing Transcript 116:6-10, August 1, 2019 (the Company CEO, Westcott, understood that "the [RSA] parties, in order to . . . commit . . . capital need to make sure that the case is proceeding in a prudent fashion and that they're not just keeping their fingers crossed and hoping."); *GSO Reply to Committee's Objection to the Motion to Approve the Disclosure Statement*, Docket No. 459 ¶ 24 ("the Global RSA provides, among other critical milestones, that the Confirmation Order **must** be entered within 60 days after entry of the Disclosure Statement Order . . . any failure to satisfy the Global RSA's milestones will permit the applicable parties to terminate the Global RSA and related agreements.") (emphasis added); Hearing Transcript 70:1-2, September 10, 2019 (Counsel to GSO reiterates: "we'd like to emphasize our support for the Debtors moving forward with the confirmation hearings on a timeline that enables them to reach the milestones under the RSA."). In light of the foregoing, it is clear the arguments asserted in the Motion challenge the Debtors and GSO's repeated contentions that these cases **must** be concluded rapidly, and the Plan **must** be approved by a date certain. Therefore, the amount of time elapsed does not weigh in favor of granting of the Motion.

22. *Factor 8 – Motivation for Extension*: The Debtors have indicated that the requested extension is needed "to preserve their exclusive right to both prosecute the Plan currently on file and file and solicit a new plan of reorganization should unforeseen issues arise with respect to confirmation" Motion ¶ 12. The Debtors should not be allowed to exclude other parties in interest from filing a plan—signaling to creditors that they are the only game in town. See In re Hoffinger Industries, 292 B.R. 639, 643 (B.A.P. 8th Cir. 2003) ("[a]n extension should not be employed as a tactical measure to put pressure on parties in interest to yield to a plan they consider unsatisfactory.") (citation omitted).[5] In the event, the Debtors' Plan fails, alternative

---

[5] As the Court is aware, the Committee opposes the Plan and has issued a letter urging Class 5 Claim Noteholders to reject the Plan. See **Exhibit A**, Committee Letter.

plans should be allowed.  See In re PG&E Corporation and Pacific Gas and Electric Company No. 19-30088-DM (Bankr. N.D Cal. Oct. 9, 2019) ("The risk that Debtors' plan will not be confirmable for some reason is not worth turning away a viable alternative.") Accordingly, this factor weighs against granting the Motion as the Debtors' have not expressed a meaningful reason for the need of an extension after the Exclusive Periods end.

23.  *Factor 9 – Unresolved Contingencies*:  The Plan and Disclosure Statement have already been filed and the Motion does not raise any argument relating to this factor. Accordingly, this factor does not weigh in favor of granting the Motion.

24.  The Debtors have further asserted, without any evidence, that an extension of the Exclusive Periods is essential to avoid "risking . . . substantial additional costs, disruption, and uncertainty that would attend the expiration of the Exclusive Periods."  Motion ¶ 10.  However, in order to receive the relief requested in the Motion, the Debtors must make an affirmative evidentiary showing of cause for an extension.  See, e.g., New Millennium Mgmt. at *6; In re Ravenna Indus., Inc., 20 B.R. 886, 889 (Bankr. N.D. Ohio 1982).  As set forth above, the factors considered by courts in determining whether such cause exists weigh overwhelmingly against granting of the Motion.  Moreover, the Debtors cannot show any harm or prejudice from leaving the *status quo* unaltered and allowing exclusivity to expire, given that the Plan is already on file, the Disclosure Statement has been approved, and the Exclusive Solicitation Period does not expire until December 15, 2019.  The Debtors have not carried the burden required as a matter of law for an extension of the Exclusive Periods to be granted.

11

## **CONCLUSION**

**WHEREFORE**, for the foregoing reasons, the Committee respectfully requests that the Court: (i) sustain this Objection; (ii) deny the relief requested in the Motion; (iii) grant the Committee such other and further relief as is just and proper and (iv) enter the order attached at **Exhibit B**.

[*Remainder of Page Intentionally Blank*]

Respectfully submitted,

Dated: October 11, 2019
         Houston, Texas

By: */s/ Hugh M. Ray, III*

**PILLSBURY WINTHROP SHAW PITTMAN LLP**
Hugh M. Ray, III (State Bar No. 24004246)
Two Houston Center
909 Fannin, Suite 2000
Houston, TX 77010-1028
Telephone: (713) 276-7600
Email: hugh.ray@pillsburylaw.com

- and -

**BROWN RUDNICK LLP**
Robert J. Stark (admitted *pro hac vice*)
Bennett S. Silverberg (admitted *pro hac vice*)
Uchechi Egeonuigwe (admitted *pro hac vice*)
Seven Times Square
New York, NY 10036
Telephone: 212-209-4800
Email:   rstark@brownrudnick.com
bsilverberg@brownrudnick.com
uegeonuigwe@brownrudnick.com

-and -

Jeffrey L. Jonas (admitted *pro hac vice*)
James Stoll (admitted *pro hac vice*)
One Financial Center
Boston, MA 02111
Telephone: 617-856-8200
Email:   jjonas@brownrudnick.com
jstoll@brownrudnick.com

*Counsel for the Official Committee of Unsecured Creditors*

## **CERTIFICATE OF SERVICE**

  I hereby certify that, on October 11, 2019, a true and correct copy of the foregoing was served via email through the Bankruptcy Court's Electronic Case Filing System on the parties that have consented to such service.

               */s/ Hugh M. Ray, III*
               Hugh. M. Ray, III