United States Courts
Southern District of Texas
FILED

OCT 28 2019

David J. Bradley, Clerk of Court

THE UNITED STATES BANKRUPTCY COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

HOUSTON DIVISION

In re:

LEGACY RESERVES, INC., et al. 1                    Case No. 19-33395

Debtor's                                            Chapter 11 (Jointly Administered)

## OBJECTION OF EQUITY SECURITY HOLDER ARJUN S. RAUTELA

## TO THE DEBTOR'S JOINT PLAN OF REORGANIZATION

**DISCLAIMER: THIS DOCUMENT WAS PREPARED, WRITTEN, REVISED AND EDITED BY ARJUN S. RAUTELA. I ACKNOWLEDGE THAT ANY POTENTIAL SETTLEMENT BETWEEN THE DEBTOR AND UNSECURED CREDITOR COMMITTEE PRIOR TO THE CONFIRMATION HEARING MAY ALTER THE MERITS OF THIS OBJECTION.**

The Honorable Judge Marvin Isgur:

### Introduction

I am a post-petition shareholder in Legacy Reserves (LGCYQ). I have 'OPTED OUT' of Third Party Releases established in section VIII.D of the Plan, and emailed the form to Kurtzman Carson Consultants LLC. I understand this 'OPT OUT' provision does not apply to the treatment of Class IX Equity Interests and this nonvoting impaired asset category is still bound to the terms of the currently proposed Plan. I support the Unsecured Creditor Committee with their discovery pursuits of the debtor's valuation, which they claim effects the recovery of retail unsecured creditors. The valuation will be discussed at the Confirmation Hearing as I have informally read from unspecified motions. Being of a non-voting impaired asset class in this case, I am curious about your opinion regarding the UCC's proposal about the valuation of assets.

I also support the inquiries of the UCC regarding the pedagogical and professional responsibilities directed towards the Debtors. This involves a request for plan filing exclusivity and voting solicitation from impaired asset classes embodied by the unsecured creditors involving a pre-designed envelope that states an already written address of destination that was difficult, if not impossible by eligible parties to verify.

### Preface

Judge Isgur, I want to make some comparisons of Sidley & Austin from this case to Kirkland & Ellis who represented the Debtor from the second Vanguard BK that underwent the supervision of The Honorable Judge David Jones this past summer. There is proof I believe that S&A is showing signs of an insecure type of professionalism. The Disclosure Statement from Vanguard 2 called for a voting process to confirm the plan. All law firms representing Ad Hoc Groups and Committees of secured lenders trusted the process and submitted votes in time for the Confirmation Hearing with basically zero interference. A ton of objections were filed to confirmation, but the law firms representing the secured lenders did not show support for the Debtor via the docket because they let voting results do the talking. K&E handled everything. Prime Clerk notified the court just days before the Confirmation Hearing of solicited voting results where every party in interest K&E claimed to vote in favor supported the Findings of Fact and Conclusions of Law. However, the request for filing exclusivity came days after the objection deadline to the Confirmation Hearing. Below is a section from K&E's motion for plan filing exclusivity as an abundance of caution.

>Docket 541, pg 11, Prime Clerk, Case # 19-31786
>
>https://cases.primeclerk.com/vnr/Home-DocketInfo?DockSearchValue=541
>
>**III. An Extension of the Exclusivity Periods Will Not Prejudice Creditors.**
>21. The Plan is supported by holders of a substantial majority of outstanding funded debt obligations across the Debtors' capital structure, and the Debtors have consistently sought to build further consensus. Indeed, the Debtors have worked diligently to evaluate restructuring alternatives and have coordinated and will continue to coordinate with their major stakeholders and the Committee. The results so far indicate that a largely consensual restructuring is within reach, but the complexity of these chapter 11 cases evidences the need for additional time for the Debtors to consult and negotiate with their stakeholders. **Accordingly, the Debtors are not seeking an extension to pressure their creditors or other parties in interest; rather, the Debtors are seeking an extension to facilitate continued engagement with creditors in an effort to build further consensus.**

Judge Isgur, now read docket 636, pg 7 in the below link and scroll down to the conclusion section from the Legacy Reserves bankruptcy case. The Debtor is replying to the objection of the UCC's stance on plan filing exclusivity. It states:

>Docket 636, pg 7
>
>http://www.kccllc.net/legacyreserves/document/1933395191016000000000036
>
>**II. Conclusion.**
>14. In light of the substantial progress made by the Debtors in these chapter 11 cases, it would be counterproductive to allow plan exclusivity to expire at this time – **especially where no other entity, other than the Committee, has taken issue with the requested 90-day extension of the Exclusive Periods.** For the reasons set forth above and in the Motion, the Debtors respectfully request that the Court overrule the Committee's Objection and grant the Motion.

### Summary

The above assumption is false. I am a party of interest, I take issue, in addition to the UCC, and their concerns about letting the debtor file for plan exclusivity. However, my letter objects to the plan as a whole even though it discusses attributes of exclusivity. In Vanguard 2, K&E worked with the UCC realizing that they were one of the few hurdles in between them and a potential confirmation. Although all

categories of unsecured creditors voted against the plan, they settled with the UCC, and this perspective became evident by the UCC supporting the Debtor at confirmation. After knowledge was documented on this move via Prime Clerk, K&E filed for plan exclusivity just days before the Confirmation Hearing and days after the objection deadline (See bolded text from the Prime Clerk indentation). One of the main reasons was an attempt to reach out to non-supporting creditors who voted against the plan to reach a post vote consensual resolution. Many of these objecting creditors settled with the Debtor within a couple days of the exclusivity motion. This does not seem to the case between the creditors of Legacy Reserves and the debtor entity of Legacy Reserves. All non-impaired nonvoting classes supported the plan by 100% in Vanguard 2. With Legacy, Sidley & Austin keeps claiming that they have overwhelming support from secured lenders, but KCCLLC (Ballot, Docket & Vote Processing Center) never filed an update on voting results days after the Debtor submitted a motion for filing exclusivity (Docket 603).

I have also seen dockets of 10 to 20 page motions where the UCC claims a failure by the debtor to enclose a self-addressed envelope for retail unsecured creditors to vote.

> Docket 592 pg 6 paragraph 6, part b
> http://www.kccllc.net/legacyreserves/document/1933395191011000000000053

The UCC claims that Legacy Reserves does not want to solicit fair and accurate votes. This reasoning is why I do not see the UCC believing an interest of exclusivity from the Debtor would create an environment of interest and ambition to reach out to unsecured creditors beyond their current efforts so a consensual resolution with dissenting creditors can be reached post vote as we have seen in other cases. I understand and can read how the debtor has responded to these motions with their own criticisms (Docket 602 & 636) of the UCC, but just think about this for a moment Judge Isgur. There are so many harder things in life compared to physically making sure a self-addressed envelope in enclosed in a solicitation package to retail investors at the voting impaired level. An example of a more difficult task in life is writing a 10-20 page motion trying to rationalize after the fact issues related to vote collection. I will go ahead and mail Sidley & Austin (Houston) a copy of this objection with the hope an example can be set to provide a framework affecting their legal mission in the future that can show evidence, which respects retail investors that represent voting impaired asset classes.

I have communicated briefly with the attorneys that represent the Unsecured Creditor Committee (UCC) regarding my interest in this case. I received through first impression a hospitable attitude and nature as a response to questions. I sense when this hospitality is directed within the inclusive context of this case, it has the potential to explore full rights of retail investors at the voting impaired unsecured creditor level.

### Conclusion

**WHEREFORE,** I submit this **OBJECTION** to confirmation of the Debtor's Joint Plan of Reorganization based on various points made above regarding proper professional conduct of exclusivity, procedural voting solicitation, and valuation of assets based on the Debtor's (Legacy Reserves) filed motions to date.

RESPECTFULLY SUBMITTED,

Arjun S. Rautela

3304 Pecan Park Drive

Flower Mound, TX 75022